UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROY C. BRADLEY, SR.,

    *Petitioner,*        CRIM. CASE NO: 13-cr-20622
                                    CIV. CASE NO.: 1:16-cv-11190
v.                                     DISTRICT JUDGE THOMAS L. LUDINGTON
                                    MAGISTRATE JUDGE PATRICIA T. MORRIS
UNITED STATES OF AMERICA,

    *Respondent.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S 28 U.S.C. § 2255 MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Doc. 138)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's Motion to Vacate Sentence (Doc. 138) be **DENIED**.

**II.    REPORT**

    **A.    Introduction**

The motion to vacate sentence (Doc. 138) was referred to the undersigned magistrate judge by U.S. District Judge Ludington. (Docs. 140.) On December 12, 2014, Petitioner Roy C. Bradley, Sr. ("Bradley" or "Petitioner") was convicted, after jury trial, of four counts of various knowing and unlawful practices regarding treatment of asbestos-containing material under the National Emissions Standards for Hazardous Air Pollutants under the Clean Air Act. (Doc. 98)("asbestos case" or "instant case.") A jury trial was held from November 19, 2014, to December 1, 2014, and Petitioner was convicted on all Counts, i.e., Counts 1-4. (Doc. 98.) On January 14, 2015, an Order entered allowing substitution of retained defense counsel, Mark Satawa, for previously court-

appointed counsel, Elias Escobedo. (Doc. 116.) Judgment entered on March 18, 2015, sentencing Bradley on Counts 1-4 to 60 months incarceration, to run concurrently and directing him to surrender for service of sentence "as notified by the United States Marshal." (Doc. 124.) A motion for bond was filed on March 12, 2015 (Doc. 121) and, although there is no docket entry indicating how this motion was resolved, it appears to have been resolved at the time the judgment was entered. The parties agree that Bradley is to be continued on bond until after the conclusion of his sentencing in a separate case against him described below, *i.e.*, 14-20216. Next, in the instant case, a sealed order was filed on April 17, 2015, directing Bradley to make reasonable payments toward reimbursement for legal services provided to him. (Doc. 125.) On June 24, 2015, an amended judgment was filed with the same sentence, changing special conditions of supervision. (Doc. 134.) A second amended judgment was filed on June 29, 2015, again with the same sentence but changing the special conditions of supervision. (Doc. 136.) An amended restitution addendum was also filed that day. (Doc. 137.)

Bradley did not appeal his conviction or sentence and on April 1, 2016, Bradley filed a motion to vacate sentence under 28 U.S.C. §2255. (Doc. 138.) A motion to dismiss the instant motion was the subject of a previous Report and Recommendation (R&R). (Doc. 148.) The R&R was adopted and the motion to dismiss denied. (Doc. 152.) A response was filed on April 7, 2017 (Doc. 161,) and a reply was filed on April 18, 2017. (Doc. 162.) An evidentiary hearing was held on June 27, 2017. Supplemental briefs were submitted after the hearing. (Docs. 174, 175.) Therefore, the underlying motion is ready for resolution.

### B. Analysis and conclusions

#### 1. 2255 and ineffective assistance of counsel standards

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-pronged test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable.

*Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

### 2. Application and analysis

Petitioner argues that counsel was ineffective because he failed to properly assert Petitioner's "rather simple defense...there was no asbestos to be improperly removed because

4

[Petitioner] had hired an asbestos abatement company, A-Plus, to do it properly five months earlier." (Doc. 138 at ID 2065.) More specifically, Petitioner alleges that counsel failed: (1) to "learn the basic facts of the case"; (2) "investigate potential witnesses who would have exonerated" Petitioner; (3) "adequately cross-examine government's witnesses[,]" i.e., Matt Scherret and Jason Walbecq; and (4) "put on any defense that would prove that A-Plus abated the asbestos." (Doc. 138 at ID 2065-66, 2071.)

### a. Affidavits

In his supplemental brief, Petitioner argues that testimonial evidence from the hearing shows that counsel "abandoned his role of an advocate where he declined to present the defendant's defense because he felt it would portray the evidence in an overly favorable light to the defense" and that "new affidavits negate the government's argument that there was no remediation of the asbestos and that the testimony of two Mr. Campaus and Mr. Essex would not have been favorable." (Doc. 168 at ID 2575-80.)

Both parties expressed some concern over the use of affidavits; however, affidavits may be considered in this proceeding. Petitioner contends that the rules of evidence do not apply to evidentiary hearings under §2255, and if they do, then Petitioner suggests the court could reopen proofs to allow the government to cross-examine the affiants. (Doc. 168 at ID 2579-80.) Respondent contends that the affidavits are inadmissible since Fed. R. Evid. 1101 does not exempt §2255 hearings from application of the rules of evidence and that the affidavits deprive Respondent of its right to cross-examine the affiants. (Doc. 174 at ID 2610-11)(vitriolic statements euphemized by the undersigned.)

5

Although Fed. R. Evid. 1101(d) does not exempt §2255 hearings from application of the rules of evidence, Rule 1101(e) provides that a "federal statute or a rule prescribed by the Supreme Court may provide for admitting or excluding evidence independently from these rules." Rule 7 of the Rules applicable to habeas (§2254 and §2255) cases provides that the "judge may direct the parties to expand the record" and that "[a]ffidavits may also be submitted and considered as part of the record." Therefore, although the rules of evidence apply to evidentiary hearings, the rules applicable to habeas cases allow some evidence (such as affidavits) to be considered in habeas cases that would not otherwise be admissible. Accordingly, the Court has the "authority" to "accept affidavit evidence." *United States v. Coleman*, No. 13-65-JMH-CJS, 2014 WL 5106361, at *11, n. 1 (E.D. Ky. Oct. 6, 2014); *accord United States v. McIntire*, No. 3:08-cr-038, 2010 WL 374177, at *6 (S.D. Ohio Jan. 29, 2010)("The Federal Rules of Evidence, which ordinarily exclude affidavits as hearsay, are inapplicable to §2255 proceedings to the extent that the Rules adopted by the Supreme Court for the conduct of those proceedings allow affidavits to be considered.").

     **b.**  **Reasonableness of counsel's performance**

       **i.**  **The abatement defense**

In his brief, Petitioner contends that "[i]n his opening statement, [counsel] told the jury that asbestos was properly abated by a company, A-Plus, hired by Roy Bradley" but that he "failed to adequately cross-examine government witnesses in a manner consistent with that defense." (Doc. 138 at ID 2071.) In his supplemental brief, Petitioner adds that "[a]fter the evidentiary hearing, the Defendant sent a private investigator to speak with three individuals...They swore under oath that whenever [an] asbestos issue was detected, work stopped and proper remediation took place." (Doc. 168 at ID 2577-78.) The affidavits attached were from Brian Compau, Gerald Essex (co-

6

defendant), and Bart Compau. (Doc. 168 at ID 2583-86.) The affidavits themselves are not quite that definitive and one directly conflicts with the above summary description. Brian Compau responds to the question, "[w]as asbestos removed before any construction began?" with "[t]o the best of my knowledge, it was." (Doc. 168 at ID 2583.) Gerald Essex responded to the question "[t]o your knowledge, was all asbestos abated from the building before demolition began?" with "Yes." (Doc. 168 at ID 2584.) Bart Compau responded to the question, "[w]as asbestos removed before any construction began?" with "I remember there being some asbestos on the floor that had fallen off that was listed on the survey. It could have fallen from water damage of [sic] just with age. I don't remember seeing where any asbestos had been removed by anyone." (Doc. 168 at ID 2585.) It is interesting to note that it was not until after the evidentiary hearing that current counsel thought to seek and memorialize the testimony of these three potential witnesses; yet, he criticizes trial counsel for not thinking to do so several years ago at trial. Even assuming the affiants would have testified similarly to the statements made in the affidavits, I find it was not ineffective assistance of counsel to not call them for the reasons stated below.

At oral argument, Petitioner focused on the abatement defense as the key argument in his contention that trial counsel was ineffective. Trial counsel testified that he met with Petitioner 7-10 times, three of which involved only trial counsel and Petitioner. Trial counsel indicated that he had a good relationship with Petitioner and that he and Petitioner were "in sync" as to trial strategy when they met alone but that when others were present, this harmony was disrupted. When alone, the agreed trial strategy was to cross-examine government witnesses, not to introduce evidence that would be tantamount to a fraud on the court.

At the remainder of the meetings, various other people attended, most notably, co-defendant Steven Ingersoll. Trial counsel expressed concern that his client was Ingersoll's "puppet" and was not making decisions on his own. Trial counsel explained that at the last meeting before the trial, Petitioner identified the person behind the asbestos issues as Steve Ingersoll and Petitioner agreed that his defense would focus on Steve Ingersoll's responsibility for any improper conduct. Then, when walking into the courtroom on the day of trial, Petitioner told trial counsel not to say anything about Ingersoll. There was some testimony that the change in strategy may have been discussed two-three weeks before trial. Trial counsel stated that Petitioner's comment was a huge shift in strategy exacerbated by the fact that the other defense offered by Petitioner, that Petitioner had paid the Compau brothers (or the business they worked for, "A Plus") $9,000 to remove asbestos, was difficult to present since there was no physical evidence, no receipts, no cancelled check, etc.. In addition, trial counsel testified that the Compau brothers had told him that they did not receive $9,000 to abate the asbestos. Instead, trial counsel only saw one or two invoices for $100 that related to some asbestos removal and that was included in the discovery provided by the government. Discovery provided by the government included an analysis that it would have been impossible for the asbestos to have been removed for the costs alleged to have been paid by Petitioner to the Compau brothers. Therefore, even if the Compau brothers would have testified similarly to the statements made in the affidavits, trial counsel's decision not to call them was not unreasonable and did not fall below the *Strickland* standard because of the lack of corroborating evidence to support the statements.

As to other physical evidence, Petitioner urges that trial counsel should have presented photographs (which were largely included in the discovery provided by the government) to support

8

the abatement defense. The photographs that Petitioner and his family urged trial counsel to proffer as evidence that asbestos was abated before Petitioner began working on site were taken by Sally Sanders. Sally Sanders testified, at the evidentiary hearing, that she had been hired by Steve Ingersoll to photograph the school building project over the year and one-half to two year time period the improvements were made. The photographs she took were then placed on a blog/website chronicling the project. Sally Sanders testified that the purpose of the photographs was to show the project's progress, to document the project for historical and publicity purposes, not to document the legality or illegality of the asbestos removal at the project site. Trial counsel testified that the photographs taken by Ms. Sanders showed areas where some asbestos had been removed but that since not all areas were shown, they were of little value and were potentially misleading. Ms. Sanders was subpoenaed by the government but was not called as a witness by either the government or the defense at trial.

The "decision whether to call a witness or present evidence is presumed to be a matter of trial strategy and cannot be considered ineffective assistance of counsel only when it deprives [Petitioner] of a substantial defense." *Davis v. United States*, No. 2:03-CR-62, 2012 WL 1866592, at *7 (E.D. Tenn. May 22, 2012), citing *Strickland*, 466 U.S. at 689. I suggest that trial counsel's decision not to call Ms. Sanders because her photographs did not focus on asbestos abatement but were for publicity purposes, did not present the full picture of all that occurred on the premises, and because he felt the evidence could be misleading was not deficient but was an ethically based decision that cannot be considered ineffective assistance of counsel. *Nix v. Whiteside*, 475 U.S. 157, 166 (1986)("counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law.")

9

As to other witnesses, trial counsel testified that during the trial, another attorney, Jeff Day, had issued subpoenas to the Compau brothers. The trial court indicated that it would allow Bradley to call the Compau brothers despite the lateness of the subpoenas. However, trial counsel testified that Petitioner told him not to call the witnesses or if they were called, not to ask them if they were paid for asbestos removal. Mr. Day wanted to substitute in for trial counsel and trial counsel did not object, however the trial court did not allow the mid-trial (near the time of the government closing its case) substitution to occur. Since the salient point to be made by the Compau brothers testimony was to establish whether asbestos removal had been accomplished by them at the behest of Petitioner and Petitioner did not want counsel to inquire into that topic with them, trial counsel did not call the Compau brothers as witnesses. Although Petitioner's demands that counsel not pursue the testimony of the Compaus may or may not have been the best strategical choice, Petitioner cannot now legitimately claim that counsel's acquiescence was ineffective assistance. *Jalowiec v. Bradshaw*, No. 1:03CV0645, 2008 WL 312655, at *86 (N.D. Ohio Jan. 31, 2008)("[T]actical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."), citing *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

Trial counsel also testified that he made a decision not to call Mr. Richard (Petitioner's brother-in-law) as a witness because he might do more harm than good. Mr. Richard had been referred to as a whistle-blower; Mr. Richard was focused on his concerns that improper or incomplete asbestos removal would harm the children and staff at school, and that those working on the project did not have proper protection from asbestos, especially the homeless people that Petitioner allegedly hired from the "Mission" and paid in cash. Trial counsel also decided not to

10

call Mr. Latowski as a witness because of his criminal history. Neither of these decisions fell below the standard of sound trial strategy.

### ii. Adequacy of counsel's learning, investigation, and cross-examination

Petitioner also argues that counsel failed to "learn the basic facts of the case[,]" "investigate potential witnesses who would have exonerated" Petitioner and to "adequately cross-examine government's witnesses." (Doc. 138 at ID 2065-71.)

Gayle Ingersoll (Defendant Steven Ingersoll's brother) testified that he offered trial counsel a power point presentation with a time-line describing the individuals involved in the project, but that the power point presentation made by trial counsel was not the same. He also testified that trial counsel was invited to "study sessions" with him but that trial counsel did not attend. Gayle Ingersoll also stated that trial counsel wanted to shift the blame to Steve Ingersoll but that Petitioner did not agree with that strategy. During a break in the trial, Gayle Ingersoll stated that Petitioner also gave a presentation to trial counsel regarding what he wanted the defense to be and the witnesses he wanted to call, i.e., the Compau brothers, Ms. Sanders, and Mr. Latowski. Other witnesses discussed were all called by the government and subject to cross-examination from trial counsel. According to Gayle Ingersoll, Petitioner's strategy was to say that he had no involvement in abatement and no knowledge of what happened because he was not around. Gayle Ingersoll also complained that trial counsel did not meet with or speak to Ms. Sanders about the photographs she had taken even though they had all been provided to the government and then to Petitioner during discovery.

Petitioner's daughter, Krystie Bradley Wyson, testified that she met with trial counsel 3-5 times and that when they met, it appeared trial counsel understood the proposed defense strategy

but the next time they met it would appear he had forgotten. She surmised that trial counsel did not listen well to her and her family. She also testified that Petitioner disagreed with a defense strategy that would point the finger of blame at Steve Ingersoll. She also drafted a power point presentation and gave it to trial counsel but trial counsel did not use her presentation either. Ms. Wyson noticed the relationship between Petitioner and trial counsel decline during trial. She indicated the family had hired a private investigator but she initially was not sure whether the reports were given to trial counsel before trial but then remembered that the reports came out after trial and were used in connection with the investigation into potential witness intimidation. Ms. Wyson also met with attorneys Jeff Day and Andrew Concannon regarding Petitioner's case. She stated that in her opinion, trial counsel believed Petitioner was guilty. In addition, she opined that trial counsel thought that Petitioner was attempting to perpetrate a fraud on the court and thus, he would not offer Ms. Sanders's photographs.

"To establish ineffective assistance of counsel, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" and a "'strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.'" *United States v. Meda*, No. 11-20052, 2017 WL 993182, at *2 (E.D. Mich. Mar. 15, 2017), quoting *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).

Counsel's failure to coopt the power point presentations of Petitioner and his family and friends, or to study under the tutelage of Petitioner's family and friends, or to speak to a photographer whose photographs were given to Petitioner in discovery and which were taken for publicity purposes rather than as proof of asbestos abatement (or lack thereof) does not amount to

ineffective assistance of counsel. Nor does the fact that trial counsel declined to present the ever-changing defenses put forth by Petitioner, his family, or the Ingersolls establish deficient performance. "The Sixth Amendment does not guarantee that an attorney and his client will see eye-to-eye on all issues[.]" *United States v. Patrick*, No. 09-31-GFVT, 2014 WL 29381, at *5 (E.D. Ky Jan. 3, 2014). Finally, an attorney's belief or disbelief as to his client's guilt or innocence is irrelevant; the only salient question is whether counsel rendered effective assistance of counsel.

As to Petitioner's allegations regarding inadequate cross-examination of Matt Scherett and Jason Walbecq, I find these arguments also fail to establish that trial counsel's performance fell below the mark. Petitioner argues that both these witnesses stated "that they were ordered to disturb or remove asbestos-covered pipes in functional spaces" but both had changed their testimony between their two grand jury appearances yet trial counsel failed to impeach them. (Doc. 108 at ID 692.) The difference in Scherett's testimony was that in the first grand jury he stated the pipes were not covered with anything whereas, in the second grand jury he testified that due to the messy nature of demolition, asbestos must have been disturbed and released from the asbestos covered pipes. (Doc. 108 at ID 692.)  Petitioner also argues that several statements made by these two witnesses were "factually impossible" since, Petitioner contends, photographs (presumably taken by Ms. Sanders) showed that the asbestos was already abated by the time these individuals allegedly saw asbestos on the pipes. (Doc. 108 at ID 692-93.) These "factual" impossibilities are not quite the smoking gun Petitioner would have them be. What fails to appear in those photos still may in fact have been present on other, non-photographed areas of the premises. In addition, most all witnesses testify to approximate dates and times since memories fade and most lives are not

13

fully chronicled. Thus, the failure to challenge an exact date of observation by witnesses is not unreasonable.

Petitioner also contends that trial counsel failed to adequately cross-examine Cindy Zastro of the Michigan Occupational Safety and Health Administration. (MIOSHA). Petitioner contends that she made four statements that were false: (1) that she cited another builder, Thunder Builders, for asbestos violations when she did not; (2) that she saw insulated pipes in the crawl space on a date when another witness testified that the crawl space was locked up on that day; (3) that she saw a drop ceiling grid on a date when another photograph taken six months earlier showed it present then; (4) that Petitioner's workers recklessly disturbed asbestos when "[i]n fact, when Roy Bradley did discover the batch of asbestos-insulated pipe inside a wall that had been removed, he immediately shut down the job site." (Doc. 108 at ID 694.) Petitioner also argues that trial counsel should have objected to her testimony regarding common boiler asbestos problems. (*Id*.)

As to the first alleged falsity, the government has shown, in Exhibit 13, that Ms. Zastro's testimony was true as she did sign a citation to Thunder Builders. As to the remaining alleged falsities, they are simply not sufficiently significant to render trial counsel's performance deficient. The second and third issues center on the timing of observations but, as stated above, witnesses often fail to give precise dates. Thus, the failure to challenge an exact date of observation is not unreasonable. The final alleged falsity is a non-sequitur; the fact that Petitioner shut down the job site after finding asbestos on one occasion does not directly disprove a statement that he failed to do so on other occasions. Therefore, none of these claims state any ground for finding trial counsel's performance deficient or unreasonable.

### c. Prejudice

A perusal of the trial transcript excerpts reveals a fair proceeding and a jury verdict supported by at least sufficient evidence. Thus, even if Petitioner could have shown that counsel's performance was deficient, Petitioner is unable to show that he was prejudiced since counsel's alleged errors were not so serious as to deprive the defendant of a fair trial or a trial whose result is unreliable. *Lockhart, supra*.

### C. Conclusion

For all the reasons stated above, I recommend that the Court deny Petitioner's motion to vacate sentence.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 25, 2017                     S/ PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: September 25, 2017                      By s/Kristen Castaneda
                                              Case Manager

16