UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROY C. BRADLEY, SR.,

        Petitioner,

Crim. No. 13-cr-20622-01
Civ. No. 16-cv-11190

v.

Honorable Thomas L. Ludington
Magistrate Judge Patricia T. Morris

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING MOTION TO VACATE, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

On August 29, 2013, an indictment was returned charging Defendant Roy C. Bradley (Petitioner) with four counts of controlling and supervising a demolition and renovation activity involving 260 linear feet and 160 square feet of asbestos containing material (ACM) without proper handling, removal, and disposal of the ACM pursuant to the National Emissions Standards for Hazardous Air Pollutants under the Clean Air Act, in violation of 42 U.S.C. §§ 7412(h) and 7413(c)(1), and 18 U.S.C. §2. ECF No. 3. A jury trial was held from November 19, 2014 to December 1, 2014, and Petitioner was convicted on all counts. ECF No. 98. On January 14, 2015, an order was entered substituting Mark Satawa as defense counsel in place of trial counsel Elias Escobedo. ECF No. 116. On the four counts, Petitioner was sentenced to 60 months incarceration to run concurrently. ECF No. 124. Petitioner did not appeal his conviction or sentence. On April 1, 2016, Petitioner filed the instant motion to vacate sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. ECF No. 138. The motion was referred to Magistrate Judge Patricia T. Morris. ECF No. 140.

## I.

In his motion to vacate, Petitioner alleged his counsel failed to investigate the case prior to trial, refused to consider evidence Petitioner presented to him, failed to subpoena key witnesses from A-Plus to establish that all asbestos was abated, failed to adequately cross examine the government's witnesses, failed to introduce photographs into evidence, and rested the defense case without calling a witness or introducing any exhibits. Mot. to Vacate at 2. An evidentiary hearing was held on June 27, 2017. Judge Morris filed a report and recommendation on September 25, 2017. ECF No. 176. Judge Morris found that trial counsel's performance met the objective standard of reasonableness set forth in *Strickland* and recommended denial of Petitioner's motion to vacate sentence. *Strickland v. Washington.* 466 U.S. 668 (1984). Petitioner filed objections to the report as did the United States.[1] ECF No. 177, 178.

## II.

### A.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's report and recommendation. *See Hill v. Duriron Co*., 656 F.2d 1208,

---

[1] The United States did not object to Judge Morris's recommendation to deny the motion to vacate, but objected to her consideration of affidavits from two employees of A-Plus abatement as well as an affidavit from co-defendant Gerald Essex concerning asbestos abatement. Because the Court will adopt Judge Morris's recommendation, the Court will not opine on the propriety of considering the affidavits in habeas proceedings.

1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the magistrate judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id*. (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id*.

**B.**

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice,

or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

Claims of ineffective assistance of counsel are governed by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, (1984). First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the Strickland test defeats the claim. *Id.* at 700.

### III.

Petitioner has one general, overarching objection: "Before touching on individual issues, Petitioner would state his global objection to the magistrate which is that the Report and the Recommendation does not focus on the collective impact of trial counsel's *errors*, but instead seems to focus on granular errors without looking at the broader picture." Obj. at 1, ECF No. 177 (emphasis added). A global objection is, by its nature, unspecific and not entitled to de novo review. Petitioner's argument is an attempt at an end run around the Magistrate's Act, and the requirement that he identify specific objections. Rather than discussing Judge Morris's finding as

to any particular alleged error by counsel, Petitioner simply asserts that Judge Morris failed to consider the "broader picture." Petitioner therefore asks the Court to engage in a de novo review of every allegation in his habeas petition. The Court declines the invitation to do so. If every habeas petitioner with an IAC claim could compel de novo review by simply claiming the magistrate judge failed to consider the "broader picture," the functions of the district court and magistrate judge would be "effectively duplicated as both the magistrate and the district court [would] perform identical tasks." *See Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The purpose of the Magistrate's Act would therefore be frustrated.

Furthermore, Petitioner's argument is misplaced. Firstly, the case he cites does not support his contention. He quotes dicta from one 9th Circuit opinion to support his contention that it is improper to analyze counsel's performance at a granular level. *Id.* (citing *Browning v. Baker*, 875 F.3d 444, 471 (9th Cir. 2017)). Petitioner quotes *Browning* out of context. The *Browning* court found that, *for the purposes of granting a certificate of appealability*, it was inappropriate for the district court to separate out individual "claims" of IAC based on instances of alleged misconduct and certify only some of those "claims" for appeal. *Id.*[2] Thus, *Browning* by no means stands for the proposition that it is inappropriate to evaluate counsel's performance at a granular level. Indeed, the court in *Browning* noted that a habeas petitioner "may not rely on generalities in making [an IAC] showing; he must point us to *specific instances of [counsel's] conduct* that demonstrate incompetent performance." *Id.* (emphasis added). Petitioner's argument also has little practical value. It is true that counsel's *overall* performance is what is under scrutiny, and not just his performance on any one occasion. However, a meaningful evaluation of his overall performance starts at a granular level.

---

[2] With respect to his IAC claim, the district court in *Browning* only granted a certificate of appealability on the issue of whether counsel was ineffective by failing to investigate the source of a bloody shoeprint.

Secondly, Petitioner's argument appears to be directed to the prejudice prong of the *Strickland* test, not to the deficient performance prong. As Petitioner notes, this Court has observed that "*[e]rrors that may not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.*" *United States v. Dado*, 2013 WL 183997, at *13 (E.D. Mich. Jan. 17, 2013) (Ludington, J.) (emphasis added) (citing *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir.2007)). Notably, Judge Morris did not find counsel committed any errors at all. Petitioner incorrectly implies that Judge Morris found that counsel made some minor errors but that, individually, those errors did not prejudice the outcome. Petitioner feels those errors compounded to prejudice the outcome. Petitioner's entire analysis, however, begins with a false premise. Judge Morris did not find that Mr. Escobedo committed any errors, whether major, minor, or otherwise. Thus, Petitioner's "global objection" is a non-starter.

As to Petitioner's "individual issues" with Judge Morris's report, Petitioner did not heed Judge Morris's instruction to make specific objections and number them accordingly. Rather, Petitioner simply adopts the same organizational outline Judge Morris used in her analysis of counsel's performance, consisting of two sections: b(i) "abatement defense" and b(ii) "adequacy of counsel's learning investigation and cross examination." Rep. & Rec. at pg. 6-14. Petitoner included a footnote where he indicates "the numbering in this objection tracks the magistrate's opinion." Obj. at 1. This does not help pinpoint his objections considering sections b(i) and b(ii) accounted for roughly 9 of the 10 pages of Judge Morris's analysis. Even if Petitioner objects to every word in that analysis, he cannot compel de novo review by drafting what appears to be another supplemental brief and simply labeling his headings the same way Judge Morris did.

He engaged in minimal discussion of any of the content of Judge Morris's report and made few specific references to the evidentiary record. Indeed, his objections do not contain a single citation to the trial record, the evidentiary record produced in the habeas proceedings, or Judge Morris's report. His objections contain eight total citations to five cases. Petitioner seems to expect the Court to follow along with the progression of his thoughts and formulate his objections for him based on context and inference.[3]

## A.

In section b(i) ("abatement defense"), Petitioner begins by restating the "global" objection that was discussed above, namely that Judge Morris did not consider the impact of counsel's "errors" or "mistakes" on counsel's overall performance. After restating his "global" objection, Petitioner then reveals his apparent intention to re-litigate the same issues raised in his motion to vacate, with little regard for Judge Morris's resolution of those issues: "Taken individually and out of context, counsel in the Present Case may have done an adequate job of explaining these mistakes and failures away. However, put together and in context, they painted the picture of a lawyer that abandoned his duty to zealously represent his client . . ." Obj. at 4. Petitioner then proceeds to rehash many of the alleged errors of trial counsel contained in his motion to vacate, asserting identical arguments he did before, and simply reaching a different conclusion than Judge Morris did. This is precisely the opposite of what objections to the report and recommendation are intended for. *See Mira*, 806 F.2d at 637; *VanDiver*, 304 F. Supp. 2d at 937; *Howard*, 932 F.2d at 509. In section b(i) ("abatement defense"), Plaintiff makes exactly two references to the report and

---

[3] Notably, Petitioner is represented by counsel. Thus, his briefs are analyzed more stringently than a pro se litigant, and the Court is under no obligation to liberally construe those briefs. *See Haines v. Kerner*, 404 U.S. 519, (1972).

recommendation or Magistrate Judge Morris.[4] Accordingly, only these two references will be discussed.

**i.**

After explaining how he will proceed in section b(i), Petitioner begins with a discussion of the affidavits of the Compau brothers from A-Plus abatement as well as Gerald Essex. The discussion is somewhat difficult to parse. It also neglects to explain what finding of Judge Morris he is objecting to, or what allegation in his motion to vacate he is addressing

> At the evidentiary hearing, the Government argued that the Defendant had not presented the testimony of either the Compau brothers or Gerald Essex. Responding to the request of a family member, Petitioner's Counsel sent an investigator to interview these witnesses and provide affidavit for these witnesses. However, this is not a civil trial, and the doctrine that impeaching or conflicting statements has no relevancy and does not apply. Whether issues would be difficult to explain or not at trial cannot be discerned without testimony. If the magistrate judge was perplexed by these gaps, she should have ordered their testimony.

Obj. at 5.

Petitioner then immediately shifts gears to a new topic. Considering the contextual clues and the fact that this "objection" is located roughly at the beginning of section b(i) of Petitioner's objections, the Court's best guess is that Petitioner is objecting to the first portion of section b(i) of Judge Morris's report. There, Judge Morris observed that the affidavits of the Compau brothers and Gerald Essex were not definite and were in conflict with other evidence in the record. Rep. & Rec. at 6–7. When asked whether asbestos was removed before any construction began, one affiant responded "yes," another responded "to the best of my knowledge, it was" and another responded "I remember there being some asbestos on the floor that had fallen off that was listed on the survey. It could have fallen off from water damage of [sic] just with age. I don't remember seeing where

---

[4] Excluding the "global objection" already addressed.

any asbestos had been removed by anyone." Brian Compau Aff., Gerald Essex Aff., Bart Compau Aff., ECF Nos. 168-1, 168-2, 168-3.

Judge Morris ultimately concluded: "Therefore, even if the Compau brothers would have testified similarly to the statements made in the affidavits, trial counsel's decision not to call them was not unreasonable and did not fall below the Strickland standard because of the lack of corroborating evidence to support the statements." Rep. & Rec. at 8. It is unclear what exactly Petitioner's objection is or the gravamen of his argument when he stated "If the magistrate judge was perplexed by these gaps, she should have ordered their testimony." It does not appear that Judge Morris was perplexed by anything. As Petitioner does not identify any error in Judge Morris's factual findings or legal conclusions, de novo review is not warranted. Nor is it clear what the Court would be searching for on de novo review as Petitioner does not even identify trial counsel's alleged error, much less Judge Morris's alleged error.

### ii.

In his second reference to Judge Morris's report, Petitioner contends: "The magistrate judge's extension of *[Nix]* from the idea of clearly perjurious evidence, to materials where counsel had a subjective doubt is troubling." Obj. at 8. Judge Morris cited *Nix* in support of her finding that trial counsel did not err by failing to introduce Sally Sander's photographs. Rep. & Rec. at 9 (citing *Nix v. Whiteside*, 475 U.S. 175 (1986)). Judge Morris noted that:

> Sally Sanders testified, at the evidentiary hearing, that she had been hired by Steve Ingersoll to photograph the school building project over the year and one-half to two year time period the improvements were made. The photographs she took were then placed on a blog/website chronicling the project. Sally Sanders testified that the purpose of the photographs was to show the project's progress, to document the project for historical and publicity purposes, not to document the legality or illegality of the asbestos removal at the project site. Trial counsel testified that the photographs taken by Ms Sanders showed some areas where some asbestos had been removed, but that not all areas were shown, they were of little value and were

potentially misleading. Ms. Sanders was subpoenaed by the government but was not called as a witness by either the government or the defense at trial.

*Id.*

Petitioner contends "Sally Sander's testimony was that she photographed the entire rehabilitation of the site. She was not 'cherry picking' her photographs, and they were in no way 'misleading' about what was happening in the building process. In fact, they represent the best evidence of what was transpiring at the site." Obj. at 6. Judge Morris did not suggest that Sally Sander's was cherry picking photos or that her photos were misleading regarding what transpired during the building process. Rather, she noted that Ms. Sanders testified that the purpose of the photos had nothing to do with asbestos abatement. Thus, Trial counsel could have reasonably concluded that the photos would be misleading *if introduced for the purpose of establishing the extent of asbestos abatement*. Whether or not *Nix* compelled trial counsel to exclude the photos as "false" evidence, the decision to exclude the photos was well within the realm of trial counsel's discretion. *See Davis v. U.S.*, 2012 WL 1866592 (E.D. Tenn., May 22, 2012) (citing *Strickland*, 466 U.S. at 689) ("decision whether to call a witness or present evidence is presumed to be a matter of trial strategy and cannot be considered ineffective assistance of counsel only when it deprives [Petitioner] of a substantial defense.")

Trial counsel did not deprive Petitioner of a substantial defense. As Judge Morris correctly observed, considering Sally Sanders' testimony as to the nature and purpose of the photographs she took, and trial counsel's conclusion that they had little evidentiary value, his decision not to present them was reasonable. Sally Sanders was not hired to take photos documenting asbestos abatement, nor did she do so. Hr'g Tr. Audio File at 3:22:49-3:24:19, ECF No. 166. Petitioner's contention that "it was not trial counsel's job to decide whether the photos and Ms. Sanders' testimony showed 'the full picture' of the asbestos abatement," is simply incorrect and contradicts

the above-cited case law. Trial counsel has the requisite expertise to determine which potential exhibits have evidentiary value. His client has no such expertise.

**B.**

Petitioner's section b(ii) does not contain a single specific objection. This section contains exactly three references to Judge Morris or her report and no discussion of any of her factual findings or legal conclusions. First, Petitioner states "The magistrate judge states that Attorney Escobedo's strategic decisions were entitled to a high measure of deference. Defendant does not object to the black letter law statement, but disputes its application. The evidence presented at the hearing painted Mr. Escobedo as a lawyer that did not interview witnesses, did not listen to the Defendant about what his defense should be or what evidence he wanted presented, and made his decisions without the benefit of any relevant information." Obj. at 10. In contrast to Petitioner's "objection," Judge Morris's report contains an analysis of what specifically trial counsel did or did not do with respect to pre-trial preparation, investigation, and cross-examination, after which she concluded that his performance was adequate. Rather than interacting with any of these specific findings, Petitioner offers broad generalizations of what the hearing testimony reveals regarding counsel's inadequacy. This does constitute an objection.

Petitioner also contends "the magistrate's focus on the fact that trial counsel was not required to take the Bradley family crash course on the case flips the issue on its head. Like the *Browning* case, the magistrate erred by focus on each component and lost site of the 'big picture.'" *Id.* at 10. This also fails to state specific objection to Judge Morris's report. Petitioner may be referring to Judge Morris's finding that trial counsel did not err by choosing not to use the PowerPoint presentation prepared by Petitioner's daughter. Rep. & Rec. at 12. Petitioner refers to this PowerPoint again at the end of his objections when he argues trial counsel disregarded the

defense Petitioner's family worked hard to put together and his family even went to "the unprecedented lengths of putting everything into an organized PowerPoint to briefly show him their version of events and why it was not necessary to try to deflect guilt to Dr. Ingersoll." Obj. at 12. For the same reasons explained by Judge Morris, trial counsel's decision not to use the PowerPoint presentation or information contained therein did not constitute deficient performance. Nor does that fact have any impact on the "big picture" of counsel's overall performance. As Judge Morris noted, Petitioner had no constitutional entitlement for trial counsel to "present the ever-changing defenses put forth by Petitioner, his family, or the Ingersolls." Rep. & Rec. at 13.

Next, Petitioner argues trial counsel attempted to improperly "stoke the fire" against Defendant during the evidentiary hearing by suggesting he "placed the lives of poor workers in danger, implied he put the lives of children in danger, and otherwise tried to tug on heavy 'heart strings' that could inflame this Court against Mr. Bradley." Obj. at 11. This states no objection to Judge Morris's report.

Petitioner then asserts that trial counsel's testimony reveals he believed that Defendant was guilty. Obj. at 11. He contends this supports his argument that trial counsel "abandoned his duty to zealously represent the Defendant." *Id.* This will also be disregarded as it states no objection to Judge Morris's report. *Id.*

Next, Petitioner notes that trial counsel was previously found ineffective in a different case, perhaps intending to support his contention that trial counsel was also ineffective in this case. *Id.* This is not an objection to Judge Morris's report, and is irrelevant to the present matter. Thus, this line of discussion will also be disregarded. For the foregoing reasons, Petitioner's objections will be overruled.

## IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must be issued. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V.

Accordingly, it is **ORDERED** that Petitioner's objections to the report and recommendation, ECF No. 177, are **OVERRULED**.

It is further **ORDERED** that the Magistrate Judge's report and recommendation, ECF No. 176, is **ADOPTED**.

It is further **ORDERED** that Petitioner's motion to vacate, ECF No. 138, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 14, 2018


<table>
<tr><td align="center">PROOF OF SERVICE</td></tr>
<tr><td>The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 14, 2018.<br><br>                          s/Kelly Winslow        <br>                          KELLY WINSLOW, Case Manager</td></tr>
</table>